. Argued December 19, 1929; reversed February 25, 1930

IN RE STEPHENSON'S ESTATE

## PARROTT *v.* CRESON

(285 P. 224)

F. B. *Layman* of Newberg (Wm. A. Carter of Portland on the brief) for appellant.

W. C. *Winslow* of Salem for respondent.

BELT, J.   On May 14, 1924, Alice H. Stephenson, mother of the contestant, Deborah J. Parrott, died, leaving a will whereby a nominal bequest of $10 was made to her only daughter and sole heir-at-law and all the rest and remainder of her property was devised and bequeathed to William J. Creson.   The will, so far as is material, provides:

"Third: I have only one child and heir-at-law, my daughter, Deborah J. Parrott, who resides near Aurora, in Marion county, Oregon.   I have heretofore given my said daughter considerable assistance and always gave her my affection but my said daughter has not given me the proper, or any, reasonable consideration.   I have not been influenced by any person or persons against my daughter but her own neglect of me and the treatment she has given me has formed a breach which seems impossible to heal over.   She has not visited my home for more than two (2) years and does not pay any attention whatsoever to me.   I, therefore, make no bequest for her in this my last will for the reasons above stated and other good and sufficient reasons, except a nominal bequest of ten ($10) dollars.

"Fourth: All the rest, remainder and residue of my estate, wheresoever situated, that I may own or be entitled to at the time of my demise, I give, devise and bequeath unto my friend, William J. Creson, for his

sole use and benefit. I make this provision in my will for him for the reason that he has been a loyal, true friend and helper to me since 1916; that he has performed a great deal of hard work and labor on my farm, for which he has received no compensation; that I have always given him to understand that I would reward him for his kindness to me in a substantial way; that this bequest made for him, which will consist of the home place and a small personal estate that I have, will be inadequate to pay him the reasonable value for the services he has rendered to me."

After the will was admitted to probate, the daughter instituted a proceeding attacking its validity upon two grounds, (1) lack of testamentary capacity, and (2) undue influence. After hearing, the county court set aside and held for naught the will, assigning the reason that it was the product of an insane delusion. Upon appeal to the circuit court, the decree of the county court was affirmed and Deborah J. Parrott was appointed administratrix to administer the estate of her mother. From such decree of affirmance, Creson, the executor of the will, appeals to this court.

Contestant's charge that, in the making of the will, undue influence over her mother was exercised by Creson, was practically abandoned. There is no substantial evidence in the record to support such a contention. The real ground for contesting the will is that there is no basis of fact for the reasons assigned in the instrument whereby the daughter was practically disinherited. Respondent contends that there was a friendly and wholesome relationship existing between her mother and herself; that she had always shown her mother affection and proper consideration; and that the statement in the will that there was a "breach which seems impossible to heal over" is utterly without foundation in fact and, on account thereof, is an

insane delusion. Contestant also asserts that the recital by her mother in the will that she had given her "considerable assistance" and that the daughter had not "visited my home for more than two (2) years and does not pay any attention whatsoever to me" is false.

A brief statement of the facts relative to the relationship of the parties is deemed proper. Alice H. Stephenson, the testatrix, and her husband lived on a 39-acre ranch near Butteville, Marion county, which had an appraised value of $2,600. Upon the death of her husband in 1916, William J. Creson and his wife, at the request of the testatrix, moved on the farm under an arrangement whereby Creson and the testatrix were to operate it and share the profits, if any were made. Creson's wife lived on the farm for about 15 months but, leaving it, soon after secured a divorce from him in 1919. After his wife left, he said, he told the testatrix "there wasn't enough on the place for me to stay, she could not pay me—she did not make enough on the rest of the place to keep a man there," but that, after some discussion between them relative to the situation, "she wanted me to make it my home, which I did." It was not a profitable business venture from either standpoint. Creson "did not set the world on fire with work." With the aid of Mrs. Stephenson, six or seven acres were cleared for cultivation, fences were repaired, and a few outbuildings of no particular consequence were erected. Until about 10 days before her death at 65 years of age, testatrix was a strong and vigorous woman. She worked about the ranch with Creson, butchering hogs, milking cows, feeding chickens and doing anything else necessary in the operation of the farm. Creson was 54 years of age. It appears

from the evidence that he was always kind and considerate of the testatrix and that she depended largely upon him in carrying on the farm work. There is no evidence tending to show that an improper relationship existed between them. All of the witnesses practically agree that the testatrix was a "strong-minded woman." As one witness said: "You might just as well try to change the current of the Willamette river as to change her mind once she had it made up, very firm and determined." Creson impresses the writer as a sort of easy-going individual, somewhat indolent, who would never undertake to dominate any person, especially the testatrix. He was frank and open in his testimony and at no time appeared to evade questions asked concerning his relationship with the testatrix.

Relative to the mental capacity of the testatrix, we turn to some of the witnesses of the contestant who, on cross-examination, testified as follows:

Mrs. E. Leavy, a neighbor and friend of the testatrix:

"Q. What was Mrs. Stephenson's condition with reference to having possession of her mental faculties?

"A. Well, she seemed to have them, all right.

"Q. During what time?

"A. During all the time, yes.

"Q. She knew what she was doing all the time?

"A. Yes.

"Q. And she knew who her relatives were?

"A. Yes, she did.

"Q. And what property she owned?

"A. Yes.

"Q. And the character of it?

"A. Yes.

"Q. Do you know whether or not she transacted her own business?

"A. Yes, she transacted all her own business.

"Q. Did she do that during all the time up to the time of her death? Or the time she was stricken?

"A. Yes, she did.

"Q. What was her disposition as to being a woman who was easily influenced?

"A. I didn't think she was.

"Q. You think she was a strong-minded woman?

"A. Yes."

Andrew Johnson, a neighbor who had known the testatrix for about 35 years and who had observed her frequently during that period, testified:

"Q. What do you say, Mr. Johnson, as to whether Mrs. Stephenson was a woman of sound and disposing mind and memory?

"A. Well, I couldn't say, I really think she was.

"Q. She was a woman of normal mind?

"A. Well, I would think so, yes.

"Q. Capable of transacting her own business and managing her own affairs?

"A. That is the way it looked to me.

"Q. Do you think that condition prevailed up to the time she passed away, or until she was stricken in her last illness?

"A. I would rather think so, yes."

Miss Lena Wilhelm, a neighbor who had known the testatrix for about 30 years:

"Q. Mrs. Stephenson was a pretty bright woman, was she not?

"A. Yes.

"Q. Strong mentally?

"A. Yes.

"Q. Alert?

"A. Yes.

"Q. Good physical condition?

"A. Yes.

"Q. And a woman who transacted her own business and ran her own affairs?

"A. Yes, as far as I know.

"Q. Pretty strong willed?

"A. As far as I know."

Other witnesses called by contestant testified in substance to the same effect.

■■ But respondent says that her mother was a monomaniac, that is, a person who had insane delusions on some particular subject. Monomania is insanity upon a particular subject only and with a single delusion of the mind. What is an insane delusion? It was thus defined in *In re Sturtevant's Estate,* 92 Or. 269 (178 P. 192, 180 P. 595):

"A delusion is a fixed belief in a proposition which has no foundation in evidence, and which is so extravagant that a reasonable man would not adhere to it. It is a fixed and extravagant belief that a fact exists where there is no evidence to furnish a basis to such belief."

In *Potter v. Jones,* 20 Or. 239 (25 P. 769, 12 L. R. A. 161), quoting from *Middleditch v. Williams,* 45 N. J. Eq. 726 (17 Atl. 826, 4 L. R. A. 738, it is said:

"It is only a delusion or conception which springs up spontaneously in the mind of a testator, and is not the result of extrinsic evidence of any kind that can be regarded as furnishing evidence that his mind is diseased or unsound; in other words, that he is subject to insane delusions. If, without evidence of any kind, he imagines or conceives something to exist which does not in fact exist, and which no rational person would, in the absence of evidence, believe to exist, then it is manifest that the only way in which his irrational belief can be accounted for is that it is the product of mental disorder. Delusions of this kind can be accounted for upon no reasonable theory except that they are the creations of the mind in which they originate."

Having in mind these legal principles, we inquire, not whether the conclusion reached by the testatrix that her treatment by her daughter had caused "a breach which seems impossible to heal over," is supported by the greater weight of the evidence, but, rather, whether there is any evidence to support such belief. An erroneous or unjust conclusion is not an insane delusion. Neither can a court interfere with the disposition of property under a will merely because testatrix, on account of bias or prejudice, turns against the natural object of her bounty. If the belief which was the controlling factor in the making of the will can be upheld upon any hypothesis deducible from the evidence, it is not an insane delusion.

Turning to the record, we find that contestant, upon the death of her father in 1916, attacked the will in which he devised and bequeathed practically all of his property to his wife, to the exclusion of the daughter. In the petition of the daughter, asking that the will be set aside and held for naught, she made the following charges of undue influence and coercion against her mother:

"She took an undue and unfair advantage of his said mental and physical condition and * * * did take grossly oppressive and unfair advantage of the said decedent's weak and enfeebled condition and of his distress of body and mind, * * *. That said purported will was in fact made under the coercive influence of said Alice H. Stephenson acting upon and dominating the enfeebled will and mind of the said George W. Stephenson, deceased."

On direct examination, contestant was asked:

"Q. Now there has been something said about a will contest you made on your father's estate, was there any trouble between you and your mother over that?

"A. My mother never mentioned that to me, I don't believe; I know she never did. From the time we went to contest that will until the day she died she never even mentioned it. It was never mentioned between us.

"Q. Did you withdraw your contest?

"A. I did."

The record discloses the following cross-examination:

"Q. Did you talk to your mother after this contest was filed about this petition, Mrs. Parrott?

"A. I don't know, Mr. Carter, whether I did or not. I always talked to my mother but I don't know if I talked to her on that line; I can't remember anything about it."

■ Contestant would have the court believe that she visited her mother often and that the matter of contesting the will of her father was never mentioned. It is charitable to say that such evidence is highly improbable. If the mother did not talk about it, we can only account for her silence on the ground that she was too deeply grieved over the charges which her daughter had made against her. In our opinion, the facts disclosed by the evidence relative to this will contest might have been the basis of the mother's belief of bad treatment accorded to her by the daughter. This charge of coercion and undue influence would not soon pass from the memory. It will be recalled that the will was executed four years prior to the death of the testatrix and that she had ample opportunity to change its provisions had she been inclined so to do. There is much testimony to the effect that the recitals in the will were false and that a friendly and wholesome relationship existed between the daughter and the mother. However, there is testimony to the contrary

and, by reason thereof, it cannot be said that the belief expressed by the mother in her will was merely the figment of a deranged mind.

We are constrained to hold that the decree of the county court and the circuit court be reversed and the cause remanded with direction to admit the last will and testament of Alice H. Stephenson, deceased, to probate.

Coshow, C. J., and Bean, J., and Hamilton, A. A. J., concur.