Argued and submitted December 17, 1979,
affirmed February 25, 1980

In the Matter of the Estate of Nancy L. Yett,
YETT,
*Appellant,*
v.
YETT, et al,
*Respondents.*

(No. 125 741, CA 11843)

606 P2d 1174

─────────

Alan H. Johansen, Portland, argued the cause for appellant. With him on the briefs were Stewart M. Whipple and Whipple, Johansen & McClain, Portland.

Dwight L. Schwab, Portland, argued the cause for respondents. With him on the brief was Schwab, Burdick & Hilton, Portland.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

In this will contest, contestant seeks reversal of a decree admitting his mother's will to probate, contending that decedent lacked testamentary capacity when she executed the will and that the will was the product of an insane delusion that he had attempted to harm her. Contestant contends that because of either or both of those reasons the will was not the will of decedent and is not entitled to probate. We affirm, concluding that the proponents of the will have sustained their burden of proving testamentary capacity and that contestant has not sustained his burden of proving the will was the product of an insane delusion of decedent.

Decedent died October 1, 1976, at the age of 61. For about a year before her death she had experienced dizzy spells, memory lapses, and some disorientation, which included such things as imagining persons who were not present and events that had not taken place. The apparent cause of this condition was a fast growing, malignant brain tumor. On June 11, 1976, shortly before entering the hospital for surgery, decedent executed the disputed will. Her prior will, executed in 1962, had divided her estate equally between her two sons. In the will of June, 1976, decedent did not maintain the equal property division but bequeathed a substantially larger portion of the estate to her younger son.

The proponents of a will have the burden of proving the capacity of the testator. *Spencer v. Hamit,* 24 Or App 897, 547 P2d 658 (1976). The test for determining testamentary capacity has been stated frequently, most recently in *Hunt v. Galt,* 37 Or App 811, 815, 588 P2d 125 (1978), *rev den* (1979), quoting *Ingraham v. Meindl,* 216 Or 373, 375, 339 P2d 447 (1959).

> " 'In order to establish testamentary capacity it must appear that the testator at the time of making his will comprehended the nature of the act in which he is then engaged, knew the nature and extent of his property, had in mind the persons who were, or

[711]

should have been, the natural object of his bounty, and the scope and reach of the provisions of the written instrument. * * *' "

In determining whether the test is met, great weight is accorded the testimony of the attesting witnesses and those who were present at the execution of the will; it is decedent's capacity at the time of the will's execution, not her general condition over a span of time, that concerns us. *Spencer v. Hamit, supra.*

Here, one of the attesting witnesses, who had known decedent casually for about 15 years, testified that in his opinion decedent knew exactly what she was doing and had testamentary capacity. The other attesting witness, who did not know decedent well, concurred in that opinion. Decedent's attorney, who had represented her for many years and who had also been her friend, testified that the day before decedent signed the will he had carefully reviewed decedent's plan of distribution with her and was satisfied that she understood what she was doing, knew the nature and extent of her estate and knew who were the natural objects of her bounty. Specifically, the attorney was certain that decedent knew she was leaving the bulk of her estate to her younger son, that she wished to do so and understood the reasons she wished to do so. He was still satisfied that she had testamentary capacity the next day when the will was executed. Another attorney, who had handled the estate of decedent's husband and who was named executor of her will, was present when decedent signed the will and the previous day when decedent discussed her intentions. He, too, testified that on both days decedent seemed oriented and of sound mind and understanding.

Decedent's daughter-in-law, wife of contestant, drove decedent to her attorney's office the day the will was executed. Apparently she trusted decedent's mental capacity and ability to orient herself: she dropped decedent off several blocks from the attorney's office, leaving her to find her own way, which she did. Friends of long standing who visited decedent earlier

that day testified that, aside from a momentary confusion, decedent was lucid. Moreover, the physician who examined decedent in his office two days before she executed her will and advised her of the necessity for surgery, also advised her to get her affairs in order. He testified that at that time decedent appeared in possession of her faculties. When decedent mentioned to him that she wished to see her lawyer about a will, the physician agreed, at least tacitly, that she should do so. It is apparent that he did not doubt her testamentary capacity at that time.

Contestant relies heavily on the testimony of that physician and one other who performed the surgery on decedent, both of whom in response to a hypothetical question expressed the opinion that a person who exhibited the characteristics summarized in the question was not of sound mind. Expert opinions based on hypothetical questions, although competent and sometimes useful evidence, are nothing more than that: evidence. Here the physicians' opinions were based on occurrences remote in time to the date of the will's execution. More significant, one of them had seen decedent two days before she signed her will, had advised her to get her affairs in order and did not doubt her competency to make a will. His opinion based upon his personal observations is more persuasive than that in response to the hypothetical question. Similarly, the testimony of lay persons who observed decedent on the day and at the time she signed the will is more persuasive than the expert testimony based upon the hypothetical question. We conclude that proponents have met their burden of proving decedents' testamentary capacity.

We also conclude that decedent was not suffering from an insane delusion that contestant had intended to harm her which, he contends, was a cause of her decreasing his share of the estate. In the first place, we are not convinced of any connection between decedent's stated fear of contestant and his relatively small share in her estate. The evidence is compelling that

[713]

decedent wished the family rock and gravel business to continue and that to this end she bequeathed the greater portion of the estate to the son who was running the business with her and was interested in its continuation; contestant thought it should be liquidated. Decedent wanted to be sure the son who got the business would have sufficient assets to meet bonding requirements.

Moreover, we do not find that decedent's fear of harm was an insane delusion. To be an insane delusion a belief must have absolutely no foundation in fact. Any evidence, however slight, which provides a basis for a belief negates the existence of a delusion which would support a conclusion that the will was a product of the delusion rather than being the will of the decedent. *Moran v. Bank of Calif., N. A.,* 206 Or 358, 269 P2d 524, 292 P2d 504 (1956); *Potter v. Jones et al.,* 20 Or 239, 25 P 769, 12 ALR 161 (1891). No purpose would be served by setting forth the details of the past strained relationship between decedent and contestant. It is sufficient to note that there was a foundation in reality, however slight, which could reasonably have inspired such fears.

The will is entitled to probate in solemn form.

Affirmed.