Argued and submitted June 25, resubmitted In Banc November 7, 1984, affirmed January 23, reconsideration denied March 8, petition for review denied April 2, 1985
(299 Or 31)

In the Matter of the Estate of
James C. Sanders, Deceased.

SANDERS et al,
*Appellants,*

*v.*

UNITED STATES NATIONAL BANK
OF OREGON et al,
*Respondents.*

(135825; CA A29126)

694 P2d 548

Ferris F. Boothe, Portland, argued the cause for appellants. With him on the briefs was Boothe & Powers, Portland.

Jeffrey M. Batchelor, Portland, argued the cause for respondents. With him on the brief were Wayne Hilliard, and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

BUTTLER, J.

Richardson, J., specially concurring.

## BUTTLER, J.

In this will contest, contestants Bruce Sanders and Joyce Wryn seek to have the will of their deceased father declared invalid. He bequeathed one dollar to each of them and left the bulk of his estate to his former wife, respondent Jordan, and to a trust for the benefit of his grandchildren (contestants' children). Contestants challenge the will on three grounds: decedent lacked testamentary capacity; the will was the product of undue influence by Jordan, and the will was the product of an insane delusion. At the close of the evidence, they withdrew the first two grounds and submitted the case only on the third, on which the trial court found against them. They appeal, and we affirm.

At the outset, we are faced with respondents' contention that, although will contests historically have been reviewed *de novo,* the legislature changed our scope of review when it amended ORS 113.055(4) in 1979. Or Laws 1979, ch 284, § 105. Before discussing that amendment and its effect, we review the context in which it was made.

In 1979, the recently promulgated Oregon Rules of Civil Procedure (ORCP) were presented to the legislature by the Council on Court Procedures pursuant to ORS 1.735. Those rules became effective January 1, 1980. It is clear from ORCP 1A and 2[1] that the last vestiges of *procedural* differences between a proceeding seeking legal remedies and one seeking equitable remedies have been abolished. All proceedings are "actions"; there are no more "suits in equity." The

---

[1] ORCP 1A provides:

"These rules govern procedure and practice in all circuit and district courts of this state, except in the small claims department of district courts, for all civil actions and special proceedings whether cognizable as cases at law, in equity, or of statutory origin except where a different procedure is specified by statute or rule. These rules shall also govern practice and procedure in all civil actions and special proceedings, whether cognizable as cases at law, in equity, or of statutory origin, for the small claims department of district courts and for all other courts of this state to the extent they are made applicable to such courts by rule or statute. Reference in these rules to actions shall include all civil actions and special proceedings whether cognizable as cases at law, in equity or of statutory origin."

ORCP 2 provides:

"There shall be one form of action known as a civil action. All procedural distinctions between actions at law and suits in equity are hereby abolished, except for those distinctions specifically provided for by these rules, by statute, or by the Constitution of this state."

final disposition of all actions is characterized as a "judgment"; there are no more "decrees." "Actions" that historically have been treated as equitable in nature are treated under ORCP as actions tried to the court without a jury. In other actions, the right to jury trial remains; if that right is waived by both parties, those actions are also treated as actions tried to the court without a jury. The same procedural rules apply to both. The Council did not purport to affect the right to jury trial, because that right is a constitutional one. Or Const, Art VII (Amended), § 3. ORCP 50 expressly preserves that right; ORCP 51 provides that all issues of fact shall be tried by jury unless both parties expressly waive a jury, or unless the court finds that trial by jury does not exist under the constitution or statutes of this state.

Neither did the Council purport to effect *de novo* review of actions on appeal, even though ORS 19.125(3) refers to "a decree in a suit in equity" as the predicate for *de novo* review, and even though there are no more "decrees" or "suits in equity." The Council does not have that authority. ORS 1.735.

Although the specially concurring opinion recognizes that the Council does not have that authority, it says that the legislature does and has exercised it, at least as to will contests, by amending ORS 113.055(4) in 1979[2] when the new rules were submitted to it. Before its amendment, that subsection provided:

> "In the event of contest of the will or of probate thereof in solemn form, proof of any facts shall be made in the same manner as in *a suit in equity*." (Emphasis supplied.)

By Oregon Laws 1979, chapter 284, section 105, that subsection was amended to change the emphasized language to read "as in an action tried without a jury." It is argued that, because a will contest is no longer characterized as a "suit in equity," ORS 19.125(3) does not apply and therefore we do not review *de novo*. The specially concurring opinion appears to view the result it claims to have been effected as inadvertent. It seems more likely that the failure of the 1979 legislature to amend ORS 19.125(3) to conform to the new Oregon Rules of

---

[2] We encouraged that argument in dictum contained in a footnote in *McGilvray v. Martin,* 49 Or App 5, 8 n 3, 618 P2d 1287 (1980).

Civil Procedure was inadvertent. Because there are no more "suits in equity" and no more "decrees," ORCP 1A and 2, the predicate for *de novo* review under ORS 19.125(3) has been eliminated, unless we make the commonsense conversion of the statutory language to conform to the ORCP, which appears to be required by Oregon Laws 1979, chapter 284, section 5. *See infra.*

Given what we have said about the ORCP and its abolition of all remnants of procedural differences between legal and equitable proceedings in the trial courts (except the right to jury trial), it is obvious that the change in the language providing the manner of trial of a will contest is nothing more than a housekeeping measure to conform the statute to the ORCP. The same result would have obtained if there had been no amendment to ORS 113.055(4); we would have conformed its language to the ORCP. That amendment was made by the same Legislative Assembly that had reviewed the proposed ORCP and permitted the rules to become effective with some changes and additions that were enacted as legislation — *all* of which was accomplished in chapter 284. The promulgation of the rules and the statutory amendments to conform some statutory language to the ORCP, including that contained in ORS 113.055(4), were all of a piece.

At the risk of belaboring the obvious, the same chapter of Oregon Laws 1979 amended a very large number of statutes (too many to enumerate here) to accomplish the same purpose as the amendment of ORS 113.055(4). Some random examples:

ORS 111.105(1) was amended to delete the words, "in law and equity" as applied to probate courts.

ORS 111.205, relating to procedure in probate courts, was amended to change the second sentence to read: "The mode of procedure in the exercise of jurisdiction is in the nature of *an action not triable by right to a jury* * * *." The underlined language was substituted for "a suit in equity." In subsections (4) and (5) the word "judgments" was substituted for the word "decrees."

ORS 93.680(1)(b) was amended to read as follows:

"(1) The following are entitled to be recorded in the record of deeds of the county in which the lands lie, in like

manner and with like effect as conveyances of land duly acknowledged, proved or certified:

"* * * * *

"(b) Judgments of courts in this state requiring the execution of a conveyance of real estate within this state." The words "judgments of courts" were substituted for "decrees of courts of equity."

Notwithstanding the amendment of numerous statutes to conform their language to the ORCP, the legislature recognized that there might be other statutes requiring conforming amendments that had not come to its attention; to cover that, it enacted section 5 of chapter 284 as a catch-all provision requiring all statutes to be read in conformity with ORCP 2:

"References in the statute laws of this state, including provisions of law deemed to be rules of court as provided in ORS 1.745, in effect on or after January 1, 1980, to actions, actions at law, proceedings at law, suits, suits in equity, proceedings in equity, judgments or decrees are not intended and shall not be construed to retain procedural distinctions between actions at law and suits in equity abolished by ORCP 2."

As pointed out above, ORS 111.105(1) was amended; however, the legislature left intact subsection (3), which provides:

"Appeals from a county court sitting in probate shall be taken to the circuit court and Court of Appeals in the manner provided by ORS 5.120."

ORS 5.120(1) provides that appeals from a county court shall be prosecuted, heard and determined in the same manner as appeals from the justice court. Appeals from the justice court are to the circuit court. ORS 53.020. ORS 53.090 provides that the circuit court shall proceed to hear, determine and try the case anew. From the circuit court determination, an appeal may be taken to this court. ORS 5.120(2) provides:

"An appeal shall lie to the Court of Appeals from the whole or a specified part of the decree or other final determinative order of the circuit court given upon such appeal to it, in like manner and with like effect as though it were from a decree or other appealable determinative order of such circuit court given in a suit in equity therein."

Thus, in will contests originating in Gilliam, Grant, Harney, Malheur, Sherman and Wheeler counties (ORS 111.055), the appeal process would involve *de novo* review in the circuit court, followed by review in the Court of Appeals in like manner as though it were from a decree of the circuit court in a suit in equity. Clearly, then, ORS 19.125(3) requires this court to "try the cause anew upon the record" on appeals in will contests originating in those counties.

Even if we were to ignore the 1979 legislature's obvious purpose in making purely housekeeping amendments to a very large number of statutes, including ORS 113.055(4), we think it is highly unlikely that the legislature intended to eliminate *de novo* review in will contests originating in all but six counties or that we can say that it did so inadvertently. Not only would that conclusion make no sense, it might also present a constitutional problem by denying equal privileges (Or Const, Art I, § 20) to those appealing judgments entered in counties other than the six counties from which our review is *de novo*. Courts should construe legislation to avoid constitutional problems, not to present them.[3]

A similar constitutional problem would arise if we were to conclude that will contests, which have been treated historically[4] as equitable in nature, must be tried without the right to a jury *and* without *de novo* review when other historically equitable proceedings in which there is no right to

[3] The specially concurring opinion passes off the denial of equal privileges argument too summarily. Although we need not decide the question, the relevant class for purposes of equal protection analysis here consists of litigants in will contests. The specially concurring opinion, however, does not attempt to deal with disparity in the privilege granted litigants in will contests entitled to *de novo* review in appeals to this court from any of the six counties from which appellate review remains *de novo* and the lack of that privilege when the contest originates in any of the other counties in the state. It says only that there is no problem, apparently because the legislature has the power to abolish *de novo* review, although it cannot confer a right to *de novo* review in a constitutionally discriminatory manner. *That* is the problem, if there is one.

[4] There can be no doubt that will contests historically have been treated as equitable in nature. In *Stevens v. Myers,* 62 Or 372, 121 P 434, 126 P 29 (1912), the court, after reviewing the history of probate proceedings, and particularly will contests, held that a will contest was "in the nature of a suit in equity" and that neither party could, as a matter of right, demand a jury trial. The court discussed a territorial statute that provided for a jury trial and a limited appeal if the contest were filed in a particular court. The court pointed out that that statute existed along with another one that treated will contests as equitable in nature with no jury, from which there was *de novo* review. The contestant could elect between the two.

a jury are reviewed *de novo.* Although it is clear that there is no constitutional basis for *de novo* review and that the legislature may define the scope of review, those propositions do not solve the problem here, because proceedings that have been treated historically as equitable in nature do not invoke the constitutional right to a jury. Statutorily, for that class of litigation, the legislature has provided *de novo* review on appeal. Undoubtedly, the legislature could abolish *de novo* review for that entire class, but whether it could arbitrarily provide a different scope of review for part of that class without offending the Equal Privileges Clause of the Oregon Constitution is the question. Perhaps the legislature could do that, but we should avoid the problem here. To say that there is no problem would be to say that the 1979 amendment created something akin to a "mugwump" when it eliminated the characterization of will contests as either legal or equitable by providing that proof of any facts in such cases "be made in the same manner as an action tried without a jury." However, under ORCP, an action tried without a jury is either an action in which the parties have waived their right to a jury, or one that has been treated historically as equitable in nature and, therefore, does not invoke the constitutional right to a jury.

One way to avoid that problem would be to conclude that, because there are no more suits in equity or decrees under ORCP, this court no longer has *de novo* review, ORS 19.125(3), in any proceeding that has been treated historically as equitable in nature. Clearly, the legislature did not intend that result, and the Council had neither the intention nor the authority to accomplish it.

■ Aside from the clear lack of legislative intent not to abolish this court's *de novo* review, based on what has been said above, the intention to preserve it is apparent from Oregon Laws 1979, chapter 396, section 1. That statute amended ORS 19.125 to add subsection (4):

> "When the Court of Appeals has tried a cause anew upon the record, the Supreme Court may limit its review of the decision of the Court of Appeals to questions of law."

If *de novo* review has been eliminated in all proceedings that have been treated historically as equitable in nature, then ORS 19.125(4) would, apparently, be limited to will contests from the six counties where our review specifically remains *de*

*novo,* and to proceedings reviewed under specific statutory provisions requiring review *de novo, (see, e.g.,* Workers' Compensation cases under ORS 656.298(6)). If the legislature intended that result, it went about it in a very odd and roundabout manner.

■ We conclude that we continue to review will contest proceedings *de novo* and proceed to the merits. Contestants argue that decedent's will was the ·product of the insane delusions that his son, Bruce, "hates my guts and * * * will only see me at my funeral," and that his daughter, Joyce, "is not a bit better * * * she has yet to tell me she loves me." There is no dispute that decedent made those statements in a handwritten note on a Christmas card about four months before he executed his will. However, whether decedent's thoughts about his two children were insane delusions depends on whether there is any foundation in fact for them. In *Potter v. Jones et al.,* 20 Or 239, 249, 25 P 769 (1891), the court defined delusions:

> "* * * Delusions are conceptions that originate spontaneously in the mind without evidence of any kind to support them, and can be accounted for on no reasonable hypothesis. The mind that is so disordered imagines something to exist or imputes the existence of an offense which no rational person would believe to exist or to have been committed without some kind of evidence to support it. * * *"

That definition has been applied in numerous cases since *Potter. See In Re Walther's Estate,* 177 Or 382, 163 P2d 285 (1945); *Parrott v. Creson,* 132 Or 234, 285 P 224 (1930); *In Re Sturtevant's Estate,* 92 Or 269, 178 P 192, 180 P 595 (1919); *Yett v. Yett,* 44 Or App 709, 606 P2d 1174 (1980).

Our review of the record satisfies us that there is evidence to support decedent's belief that neither of his children liked him, although it may be an overstatement to say that they hated him. Decedent and his first wife, contestants' mother, separated in 1964 and were ultimately divorced in 1967. Joyce stayed with her mother after her parents separated and never had a warm relationship with her father. She and her husband moved to Hawaii in 1971, and, although she sent greeting cards to her father from time to time, she never signed a card with any term of affection, which upset her father. It was not until she was almost 30 years old and after

her father wrote her what she characterized as a "poisoned pen" letter that she responded with a letter in which she stated that she loved him. He noted on the letter that that was the first time she had ever said that, and apparently it was.

Bruce joined the service shortly after his graduation from high school, and on his return in 1967 spent two years as an apprentice painter in the painting contractor business that his father had founded in the 1950s, then worked in his own painting business until 1970, when he returned to work for his father. In 1973, he began to take an active part in the running of the business, which prospered. However, in mid-1978, the father and son had a falling out, at which time Bruce quit the business. The two men never talked to each other again.

Contestant's mother, after her divorce from decedent, remarried. While she was in a coma that preceded her death in 1975, Bruce and Joyce told decedent that they had gone to their mother's apartment to search for her will and that they had removed an uncut diamond and other valuables so that her new husband would not take them. Decedent thought that that action was horrible, because his children were more concerned about their mother's belongings than they were with her life.

 There is evidence to support decedent's belief that his two children did not like him and that they were primarily interested in his money on his death. The attorney who prepared decedent's will in early 1981 testified that he discussed decedent's proposed will during two or three telephone conversations before the will was executed in the attorney's office. According to the attorney, decedent was very clear that he desired to disinherit his children, because he did not like them and they did not like him, and also because they had already received part of his estate indirectly when their mother died. Their mother had received approximately one-half of the marital assets at the time of the divorce, which she invested and left to the children on her death. Decedent told the attorney that he wanted to leave most of his assets to his second wife, to whom he had been married approximately nine years, because they had remained close friends even after their divorce and because he did not think that she had been treated fairly in the divorce settlement.

We conclude that contestants did not sustain their

burden of proving that decedent's will was the product of insane delusions.

Affirmed.

**RICHARDSON, J.,** specially concurring.

Bared to its essentials, the reasoning of the prevailing opinion is that the 1979 amendments to ORS 113.055(4) and 111.205, which removed the references to suits in equity from those statutes, do not eliminate our authority to conduct *de novo* review in will contests, because the legislature did not intend the amendments to have that effect. I agree that the legislature probably did not so intend, but its intent is irrelevant. The language that remains in the statutes after the 1979 amendments is unambiguous, and the language that was removed from the statutes was the only source of our authority to review will contests *de novo*. The prevailing opinion's conclusion is the functional equivalent of holding that a repealed statute remains in effect, because the legislature repealed it accidentally.

*De novo* review is governed by statute in Oregon. At least at this point in history, *de novo* review has no constitutional or other nonlegislative origins that require the legislature to authorize it or the appellate courts to exercise it. The legislature may create or abolish *de novo* review and may specify the kinds of cases to which *de novo* review applies. Once the foregoing elementary principles are recognized, the syllogism that resolves this case is a starkly simple one: ORS 19.125(3) directs this court to try suits in equity anew upon the record; ORS 113.055(4) and 111.205 used to categorize will contests as suits in equity; however, the 1979 amendments to those statutes removed will contests from that category. Consequently, they are no longer reviewable as suits in equity under ORS 19.125(3). *See also* ORS 111.105(1).

The prevailing opinion ascribes significance to the fact that, historically, will contests were equitable in nature. If the opinion means to suggest by that that a proceeding's origin in the courts of chancery makes its equitable character eternally immutable, I disagree. The history of this state demonstrates the contrary. Will contests have been governed by statute in Oregon since territorial times. Not all of the territorial statutes treated will contests as suits in equity, and

at least one territorial law provided for jury trials in will contests and limited appeals in them to matters of law. *See, generally, Stevens v. Myers,* 62 Or 372, 400-03, 121 P 434, 126 P 29 (1912). Will contests have not been regarded as equitable in this state because of something *inherent* in their nature or their origin. They have been treated as equitable through *most* of the state's history only because they have been designated as such *by statute.* However, the legislature has not *always* so designated them and, in 1979, it removed that designation from the relevant current statutes.[1]

The prevailing opinion makes a number of other points that I address only briefly. I do not agree with the conclusion in that opinion that any constitutional problems would result from the elimination of *de novo* review in will contests. *See City of Klamath Falls v. Winters,* 289 Or 757, 619 P2d 217 (1980), *appeal dismissed* 451 US 964 (1981). However, I think the constitutional analysis is beside the point in this case. If the legislature acted unconstitutionally by providing *de novo* review in other types of proceedings but eliminating it in will contests, the time for deciding that would arise in appeals in those other types of proceedings if the constitutionality of our statutory authority to conduct *de novo* review were to be challenged there. The constitutional problem, if any exists, cannot be resolved by our exercising *de novo* review *when we have no statutory authority to do so.*

The prevailing opinion points out that the Council on Court Procedures is expressly denied the authority to adopt rules of appellate procedure. ORS 1.735. That point is correct, but it too is irrelevant. ORS 113.055(4) and 111.205 were amended by the legislature, not the Council.

Similarly, it is not material to whether we have statutory authority to conduct *de novo* review in *this* appeal that the legislature did not alter the statutes, cited by the prevailing opinion, that relate to procedures in counties where

---

[1]The prevailing opinion suggests that, if we construe the 1979 amendments to ORS 113.055(4) and 111.205 as eliminating *de novo* review in will contests, *de novo* review of *all* traditionally equitable proceedings somehow disappears. That is not correct because, unlike will contests, most proceedings that have equitable historical origins, *e.g.,* specific performance suits, have not been the object of legislative definition or redefinition. The historical equitable character of those proceedings therefore has not been altered by legislative action.

probate matters are initially tried by the county court and are appealable to the circuit court and then to this court. Those statutes are not applicable here. If they do permit *de novo* review in the will contests to which they do apply, that anomaly shows nothing more than that the legislature's failure to amend them was inadvertent *or* that it amended the statutes that do concern us here in an inadvertent manner. As noted earlier, what matters here is what the legislature clearly did, and not what it might have intended to do instead. *Cf. Adamson v. California,* 332 US 46, 64, 67 S Ct 1672, 91 L Ed 1903 (1947) (Frankfurter, J., concurring) ("What was submitted for ratification was [the proponent's] proposal, not his speech").

I conclude that the proper standard of our factual review in this case is the substantial evidence standard. I think there was substantial evidence to support the trial judge's finding for the proponent, and I therefore concur with the prevailing opinion's holding.

Joseph, C. J., and Warden and Van Hoomissen, JJ., join in this specially concurring opinion.