Argued and submitted October 5, 1984, affirmed in part, reversed in part May 22, 1985

LARSON,
*Appellant,*

*v.*

NASLUND et al,
*Respondents.*

(16-81-09020)

In the Matter of the Estate of
Gladys M. Larson, Deceased.

LARSON,
*Appellant - Cross-Respondent,*

*v.*

NASLUND et al,
*Respondents - Cross-Appellants.*

(50-81-04332)
(CA A30259)

700 P2d 276

Lewis Hoffman, Eugene, argued the cause for appellant and appellant - cross-respondent Oliver Benjamin Larson, Jr. With him on the briefs was Hoffman, Morris, Giustina & Fox, Eugene.

Larry O. Gildea, Eugene, argued the cause for respondents and respondents - cross-appellants Robert K. Naslund and Sheila Roxanne Larson. John C. Gartland, Eugene, argued the cause for respondent Eunice Larson. With them on the brief were Larry O. Gildea, Eugene, P.C., and Perrin & Gartland, P.C., Eugene.

Before Richardson, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

In these consolidated cases plaintiff seeks to have the probate of the will and codicil of his mother, Gladys Larson, revoked (case no. 50-81-04332) and certain *inter vivos* transfers set aside (case no. 16-81-09020). In the will contest, defendant William Larson counterclaimed for all but one dollar of $16,875 previously distributed to plaintiff. The trial court found in favor of defendant on both of plaintiff's claims and in favor of plaintiff on the counterclaim. Plaintiff appeals, and successors to defendant in the will contest cross-appeal from the judgment on the counterclaim.[1] We affirm in part and reverse in part.

In 1970, Gladys and her husband, Oliver, executed separate identical wills, leaving their estate to the survivor of them and then equally to their two sons, William and Oliver Benjamin, who was called Ben and is the plaintiff in the actions. Oliver died in June, 1973. In September, 1973, Gladys executed a new will by which she left seven-eighths of her residuary estate to William and one-eighth to plaintiff.

In June, 1974, Gladys transferred a $26,000 time certificate to William. In March, 1976, she deeded the "home place" in Lane County to William and his wife, Eunice. That property was later condemned as part of the Eugene Metropolitan Sewer Expansion at a value in excess of $100,000. In 1979, William and Eunice were divorced. In September, 1980, Gladys executed a codicil to the 1973 will. It removed Eunice from the will as an alternate devisee and personal representative but otherwise republished the 1973 will.

Gladys died in May, 1981, and William was appointed personal representative of her estate. In June, the court ordered distribution of one-eighth of the estate to plaintiff. In September, he filed these actions. Pursuant to the "no-contest" clause in the will, William counterclaimed for the return of the one-eighth of the estate already distributed.

■ In both actions, plaintiff argues that the evidence does not support the trial court's finding that Gladys had the mental capacity to execute the 1973 will or the 1980 codicil

---

[1] William died in August, 1983, and his daughter Sheila was appointed as successor personal representative and became a defendant in these actions.

and to make the *inter vivos* transfers. Plaintiff also challenges the trial court's finding that William did not exert undue influence over his mother in order to gain her property. Our review in the will contest is *de novo*.[2] We have reviewed the extensive record in this case[3] and agree with the trial judge. Except for one brief post-operative psychotic episode, Gladys was of sound mind from the time of her husband's death until her own.

■ Plaintiff also failed to show the existence of either a confidential relationship or suspicious circumstances necessary to raise an inference of undue influence. *In re Reddaway's Estate,* 214 Or 410, 420-26, 329 P2d 886 (1958); *see Roblin v. Shantz, Executrix,* 210 Or 371, 378, 311 P2d 459 (1957). What the record does show is that, although Gladys depended on William for assistance in caring for her property and in some financial matters, she was not an enfeebled elderly woman who relied on her son for everything. She led an independent and active life insofar as her health allowed, and there is no evidence to show that William controlled her thoughts or actions. The record does not show the presence of undue influence. We also find, as did the trial court, that Gladys Larson had the mental capacity to make the *inter vivos* transfers and that she did so freely and voluntarily.

■ Plaintiff has also assigned as error the admission of testimony of Circuit Judge George J. Woodrich about his observations of the demeanor of Gladys during the dissolution proceeding between William and Eunice. Judge Woodrich had presided at that trial. Plaintiff relies on *Merritt v. Reserve Insurance Company,* 34 Cal App 3rd 858, 110 Cal Rptr 511 (1973). In that case the California District Court of Appeal found reversible error when a judge testified as an expert witness on the adequacy of the performance of a defense attorney in a case over which the judge had presided.

OEC 605 provides:

---

[2] Defendants argue that *de novo* review in will contests is no longer available. We rejected that argument in *Sanders v. U.S. National Bank,* 71 Or App 674, 694 P2d 548 (1984), *rev den* 299 Or 31 (1985).

[3] Plaintiff's brief is replete with conclusory statements without reference to volume and page number of the transcripts. Additionally, many references which can be located do not state the facts claimed by plaintiff. *De novo* review does not negate the obligation that the parties accurately substantiate factual claims with correct references. ORAP 7.23.

"The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point."

The rule does not preclude testimony by a judge in a separate proceeding. Plaintiff had questioned the mental capacity of Gladys to make the *inter vivos* transfers. At the dissolution proceeding Gladys had testified regarding those transfers. Judge Woodrich described Gladys' demeanor when she testified. He did not testify as an expert witness giving opinion testimony as to her competency. It was not error to allow his testimony.

We turn to defendants' cross-appeal, in which they claim that the trial court erred in refusing to enforce the no-contest provision of the 1973 will:

"SEVENTH: I have purposely made no provision herein for any other person, whether claiming to be an heir of mine or not, and if any person, or persons, whether a beneficiary under this Will or not mentioned herein shall contest this Will, having established in a court of competent jurisdiction a right to participate in my estate in any degree whatsoever, I give, devise and bequeath to such person the sum of One ($1.00) Dollar and no more, in lieu of the provisions which I have made or might have made for any such person, or persons, contesting or objecting."

The trial court refused to enforce that provision after concluding that the contestant had "probable cause" to bring the will contest. The judge made no findings of fact supporting his conclusion and cited no authority for applying a "probable cause" exception to enforcement of the no-contest provision.[4] Although some jurisdictions recognize a probable cause exception,[5] Oregon has not done so.[6] The Supreme Court has

---

[4] The judgment reads:

"The court, when the trial ended on September 28, 1983, was not being fully advised about the issues which the counterclaim raised and took the matter under advisement. Now being advised, the court finds that probable cause did exist for contesting the will of Gladys M. Larson, and upon that basis, concludes that the forfeiture clause in Gladys M. Larson's Last Will and Testament is not enforceable."

[5] *See* Annot., 23 ALR4th 369 (1983).

[6] Defendants urge that such an exception does not apply in Oregon, because the legislature did not adopt Uniform Probate Code § 3-706, which recognizes such an exception, when the Probate Code was revised in 1969. We reject the argument. The failure of the legislature to enact a provision does not mean that its converse is the law.

addressed "in terrorem" or no-contest provision in two cases.

In *Wadsworth v. Brigham, et al*, 125 Or 428, 259 P 299, 266 P 875 (1928), the illegitimate daughter of a testator contested his will. The daughter was not named in the will. In order to claim under the pretermitted heir statute (OL § 10101, a predecessor to ORS 112.405), the daughter established that she was the offspring of a common-law marriage. The will contained the following section:

> " 'In the event that any person shall contest this will, or in the event that any person claiming to be a legal heir of mine shall legally establish such claim, I give and bequeath unto him or her the sum of $5.00 in cash, and revoke any other devise or bequest heretofore made to him or her, in the event any such has been made.' "

The court refused to enforce the provision, stating:

> "We are of the opinion that as applied to this case or as to any case where the prosecution of the suit is in good faith, such a provision is void as against public policy. If, as we here hold, the plaintiff has a legitimate claim to the whole or any part of the estate of decedent, it would seem a mockery to say that in case she should establish such claim she should be cut off with what amounts to a mere nominal sum * * *." 125 Or at 446.

The court concluded that

> "Giving her $5, if she should succeed in proving her legitimacy, is so incongruous that no court could reasonably hold that she was 'provided for' within the meaning of [the statute] by such a provision. It is a case where she must die to win. Furthermore, this provision being *in terrorem,* it is void." 125 Or at 455.

The other case is *U. S. Bank of Portland v. Snodgrass*, 202 Or 530, 275 P2d 860 (1954). The court enforced a forfeiture clause in a trust provision that disinherited the testator's daughter if she married a Catholic. The provision stated, in pertinent part:

> "my trustee is authorized * * * to transfer * * * to my said daughter Merle the whole of the trust fund * * * provided she shall have proved conclusively to my trustee and to its entire satisfaction that she had not embraced, nor become a member of, the Catholic faith nor ever married to a man of such faith."

The court rejected the daughter's argument that the

provision violated public policy and that the "offending provision is in terrorem and therefore invalid." In finding *"in terrorem"* to be a phrase with an "irrational quality" and an "indefensible character," the court reviewed the *Wadsworth* decision and noted that, to uphold the testator's no-contest clause, the *Wadsworth* court would have had to rule contrary to the statutory requirements for pretermitted heirs. The court concluded:

> "After [holding the clause invalid] the *[Wadsworth]* court concluded with this dictum * * *: 'Furthermore, this provision being *in terrorem* it is void.' With this state of the record it is difficult to conclude that we are departing from an established rule of this court when we express our disinclination to apply it here or in the future." *U. S. Bank of Portland v. Snodgrass, supra,* 202 Or at 555.

Throughout its opinion the court relied on

> "firmly-established policy in Oregon to give great latitude to a testator in the final disposition of his estate, notwithstanding that the right to make a testamentary disposition is not an inherent, natural or constitutional right but is purely a creation of statute and within legislative control." 202 Or at 540.

The conclusion reached by the court from analysis of statutes and case law was that

> "taken together they reveal a long-accepted pattern of public attitude and public policy in this state respecting an almost unrestricted right to dispose of one's property on death. In view of this liberality of testamentary power, we find no occasion to narrow the freedom of a testator's right to dispose of his accumulations unless we are compelled to bend before some other public law or policy establishing limitations not presently apparent." 202 Or at 542.

■  We believe the *Snodgrass* decision overrules *sub silentio* the good faith exception to the enforcement of a no-contest provision set out in *Wadsworth.* When *Wadsworth* was decided, OL § 10124 provided:

> "All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true interests and meaning of the testator in all matters brought before them."

ORS 112.227 now states, in part:

"The intention of a testator as expressed in his will controls the legal effect of his dispositions."

The conclusion from *Snodgrass* and ORS 112.227 is that a will contestant must show that a no-contest provision is either unlawful or in contravention of some specific public policy or it will be enforced.

■ Plaintiff argues, citing *Wadsworth,* that it is against public policy to enforce an "in terrorem" clause when Article I, section 10, of the Oregon Constitution provides that every person shall have remedy by due course of law. That is the position implicitly rejected in *Snodgrass.* The constitutional provision ensures access to the courts, but does not assure litigants they will prevail. The strong public policy that a testatrix may dispose of her property as she wishes places a heavy burden on any contestant challenging that disposition. Plaintiff here failed to show that the will and codicil were executed by his mother in violation of the law or that the provision contravenes a public policy as strong as that expressed in ORS 112.227.

Indeed, the evidence shows that Gladys clearly intended to make the distributions that she did. When Gladys executed her will in September, 1973, it was reviewed by an attorney other than the one who had prepared it. That attorney testified by reading from a memorandum that he had written when he reviewed the will with Gladys:

"We discussed paragraph seven of her will and she indicated to me that she thought it was a good idea to have that provision in her will because she fully expects a lawsuit as a result of the provisions of her will."

When she executed the codicil to her will, she did not change paragraph seven.

Plaintiff's testimony was that he learned of the will in October, 1980. In December, he flew to Eugene to visit his mother and asked her to reconsider the will. Later he phoned her and again asked her to reconsider. In February, 1981, he wrote her a letter:

"Dear Mom,

"It was so good to talk to you tonight on the phone, my thoughts are very much with you and I wish that I might be

close at hand. Had I not chosen to develop my career in the San Francisco area, things might have been different.

"However, just as you and Pop found it necessary to leave Roseburg and then Klamath Falls in search of expanded job opportunities, moving to the Bay Area seemed the most sensible thing for me to do.

"In the meantime, the lines of communication have somehow fallen away though I truly thought you understood my family and I all care for you just as we did for Pop, and I always thought you cared for Bill and me equally, though recent events do not seem to bear that out.

"I wonder if you truly realize the hurt you have dealt me and the girls by not including me in discussions of your affairs. As I have told you, Bill should be compensated for his excellent attention to your needs, but it is difficult to understand that you care so little for me that you have chosen not to discuss matters or arranged for us to be represented *equally* in the balance of the estate. That is saying that you do not care for us equally. If this is the case, I think an explanation is in order that led to this decision.

"A lop sided estate not only leaves me with the feeling that you do not care, but makes things very difficult between Bill and me. Our family is small enough without creating animosity between brothers.

"The greatest heritage any of us can leave is the love of a family. It seems to me you should set the stage by arranging your affairs so Bill and I share on an equal basis. Bill will agree, I am certain, or I have greatly misjudged him. Pop loved us both and treated us fairly — I always thought you would too." (Emphasis in original.)

Despite those pleas, Gladys did not change her will. She intended that her eldest son should inherit less than his brother, and she intended to avoid the expense of litigation. We see no reason why paragraph seven of the will should be given less effect than the other provisions.

Reversed with instructions to enter judgment in favor of defendants in the amount of $16,874 in case 50-81-04332; otherwise affirmed.