Argued and submitted April 22, reversed July 6, reconsideration denied September 2, petition for review denied September 20, 1988 (306 Or 660)

In the Matter of the Estate of
Richard Dillon, Deceased.

DILLON et al,
*Respondents,*

*v.*

PHILLIPS,
*Appellant.*

(PR 3006; CA A45577)

756 P2d 1278

Michael N. Bodkin, Coos Bay, argued the cause and filed the briefs for appellant. With him on the briefs was Foss, Whitty, Littlefield & McDaniel, Coos Bay.

Patrick R. Foley, Brookings, argued the cause and filed the brief for respondents.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN,**

In this will contest, the personal representative of the decedent's estate appeals the trial court's determination that the decedent's will was void as a product of an insane delusion. We reverse.

Respondents are three of the four children[1] of Richard Dillon, who executed his holographic will in California in 1984, and two weeks later, on the advice of an attorney who had reviewed the will, executed a codicil. Dillon left nothing to his children and made statements about them in his will. With regard to Sarah, the will states:

> "The last time we met she declared that she wished I would live to be seventy years old, so when I called on her for help she could slam the door in my face."

With regard to Robert, it states:

> "Since being a teen-ager and growing into adult-hood, he, with his sister, Gwendolyn, have been on the take from our family, including even an old Aunt. He has misrepresented to me and ignored my entreaties for help and assistance, and if and when given in my late illnesses, it was done in a great rush for time—day or night, or responses in lies and cheating in trusting him with money."

With regard to Gwendolyn, it states:

> "My oldest daughter, Gwendolyn Mary, unfortunately has also stolen, cheated and lied, even to the extent of stealing my bed sheets and bathroom scale when left alone in my home."

The trial court found that there was no evidence to support those statements. It concluded that the decedent's strong negative feelings about his children caused him to imagine the events, an "insanity" resulting in delusion. On *de novo* review, we reverse.

An insane delusion is a belief which has absolutely no foundation in fact, and even slight evidence which provides a basis for the belief negates the existence of a delusion. *Yett v. Yett,* 44 Or App 709, 714, 606 P2d 1174 (1980).[2] We conclude

---

[1] The decedent did not acknowledge the fourth child as his, and that child is not a party to this action.

[2] The parties present this case as one to be resolved under Oregon law. No "choice of laws" issue is presented.

that, although the decedent's perception or remembrance of events may have differed from those of his children, there were events which provided at least a slight basis for his statements.

The children were raised by the decedent's mother. His contacts with his children appear to have been infrequent and were best characterized by fighting and mutual abuse when all were together. That pattern continued into adulthood, with complete estrangement from Sara coming in 1970, and from Robert and Gwendolyn in early 1982. Respondents were left embittered and resentful; the estrangement was apparently unregretted on the part of the decedent.

All of the respondents denied that the events recited had taken place. However, the last time that Sarah saw her father, in 1970, there had been a physical altercation, during which she had cursed her father. She did not respond to his later attempts to contact her. Whether or not she actually made the statement attributed to her, the quarrel provides a basis for him to have believed that she had threatened, in effect, to shut him out when he became elderly. Gwendolyn testified that she had not stolen her father's belongings but did admit that she occasionally took his sheets to be laundered and that sometimes it was a long time before she would return them. Although Robert denied having "been on the take" from the family, he testified that his father had allowed him and Gwendolyn to take family items which had been stored but that he had returned them when his father had changed his mind.

Insane delusions are those that originate spontaneously without evidence to support them and cannot be accounted for by any reasonable hypothesis. *Sanders v. U.S. National Bank,* 71 Or App 674, 682, 694 P2d 548, *rev den* 299 Or 31 (1985). Although the statements may actually have been wrong, there were events which could have provided a basis for them.

There is no objective evidence that the decedent was not mentally competent or that he did not know the natural objects of his bounty. His lawyer, his physician and an Oregon friend all testified that he enjoyed intelligence and mental accuity. The few remarks that he made to them about his

children were not vitriolic and indicated only that there was an estrangement between them.

We hold that the evidence does not establish an insane delusion. It shows that the decedent did not love, or perhaps even like, his children; it was a consistent extension of his treatment of them during his life to exclude them from any part of his estate.

Reversed.