Argued and submitted July 7, reversed and remanded October 5, 1994

In the Matter of the Estate of
La Verne Van Marter, Jr., Deceased.

La Verne VAN MARTER, III,
Marie Lane and Paul Van Marter,
*Appellants,*

*v.*

Julie VAN MARTER,
Individually, and as Personal Representative of
the Estate of La Verne Van Marter, Jr.,
*Respondent.*

(91-10-91804; CA A77809)

882 P2d 134

Ferris F. Boothe argued the cause and filed the briefs for appellants.

Michael D. Levelle argued the cause for respondent. With him on the brief was Bennett & Hartman.

Before Deits, Presiding Judge, and Leeson and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Appellants, the three adult children of La Verne Van Marter (testator), brought this proceeding to set aside the probate of testator's will, on the ground that the will was executed under the undue influence of respondent. Respondent is testator's second wife and the personal representative of his estate. The trial court granted respondent's motion for summary judgment. We reverse and remand.

Testator died in September 1991, at the age of 71. He had been a paraplegic since 1938 or 1939, when he was stricken with polio, and used a wheelchair for the rest of his life. Since about 1941, he had lived in Heppner, where he successfully managed an insurance business and participated in community affairs. In 1946, he married Laurel Ball. She died in April 1985, after several years of failing health.

In February 1986, respondent was hired to care for testator, first on the weekends and then as the primary caregiver. At that time, respondent was separated from her husband. In June or July, respondent moved in with testator, who told his son that he was going to marry respondent. In November, testator purchased a house in Portland and, on December 17, two weeks after respondent's divorce was final, the couple married. Two weeks later they moved to Portland.

Appellant Paul Van Marter testified at deposition that, after the marriage, his father stated that he would "never forsake" his children and would never "leave them out of [his] will." In March 1987, three months after his marriage, testator executed a will prepared by an attorney, who was also testator's personal friend. The will provided that respondent was to receive one-half of testator's estate, with the remaining one-half to be equally divided among appellants. The attorney prepared a second will in December, which made additional specific bequests to respondent, but did not amend the disposition of the residuary estate. In June 1989, testator executed his final will. That will made additional specific bequests to respondent and changed the disposition of the residuary estate, devising one-half to respondent, one-quarter to testator's son Paul and one-quarter to be divided between two grandchildren.

█ Although we review a will contest *de novo, Sanders v. U. S. National Bank*, 71 Or App 674, 681, 694 P2d 548, *rev den* 299 Or 31 (1985), this is an appeal from a summary judgment. In a motion for summary judgment, the moving party must show that there are no material issues of fact and that he or she is entitled to judgment as a matter of law. *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978). All inferences must be drawn in favor of the party opposing the motion. *Uihlein v. Albertson's, Inc.*, 282 Or 631, 580 P2d 1014 (1978).

The parties have been unable to point to any reported Oregon decision reviewing summary judgment in an undue influence case, and we have found none. Appellants argue that a summary judgment should never be granted in a will contest when the contestants claim undue influence, because proof in such a proceeding is "by a number of facts, each of which standing alone may have little weight, but taken collectively may satisfy a rational mind" of the existence of undue influence. They contend that here, the facts support a reasonable inference that respondent "got" testator to marry her, drove a wedge between his children and him, prevailed on him to make a will that eliminated two of his children and drastically reduced the inheritance of the third, and, as a result of her machinations, ended up with almost the entire estate either through *inter vivos* transfers or by devise.

█ In the abstract, ORCP 47 does not preclude summary judgment in a claim for undue influence. In reality, such cases may, indeed, be virtually nonexistent. Each case of undue influence must be decided on its own peculiar facts which, in turn, may reasonably support varying, often conflicting, inferences. *Cline v. Larson*, 234 Or 384, 410, 383 P2d 74 (1963); *see Knutsen v. Krippendorf*, 124 Or App 299, 862 P2d 509 (1993), *rev den* 318 Or 381 (1994). That choice of inferences often turns on credibility determinations made by the factfinder, who has the advantage of determining the truth after seeing the witnesses at trial. *See In re Estate of Elsie Rosenberg*, 196 Or 219, 243, 246 P2d 858 (1952).

█ The overriding question in deciding if a will has been executed under undue influence is whether the influencer, by his or her conduct, has gained an unfair advantage by means

that reasonable persons regard as improper. *In re Reddaway's Estate*, 214 Or 410, 419, 329 P2d 886 (1958). The party seeking to revoke probate must show evidence of a confidential relationship between the testator and the influencer. 214 Or at 420. The relationship must be one in which the person in whom confidence is reposed has dominance over the other. *Doneen v. Craven, Executor et al*, 204 Or 512, 522, 284 P2d 758 (1955); *Knutsen v. Krippendorf, supra*, 124 Or App at 308. The exercise of undue influence must be contemporaneous with the making of the will. *Roblin v. Shantz, Executrix*, 210 Or 371, 378, 311 P2d 459 (1957).

■■  A showing of such a confidential relationship does not, by itself, give rise to a presumption of undue influence. There must also be the presence of suspicious circumstances, including such things as: (1) the participation of the beneficiary in the preparation or destruction of the will; (2) the lack of independent and disinterested advice regarding the will; (3) secrecy and haste in making the will; (4) an unexplained change in the donor's attitude toward those for whom he or she had previously expressed affection; (5) a change in the testamentary plan that ignores the natural objects of the testator's bounty or disregards the continuity of purpose running through former testamentary dispositions; (6) an unnatural or unjust gift, and (7) the donor's susceptibility to influence. *In re Reddaway's Estate, supra*, 214 Or at 420. All factors need not be present before undue influence may be inferred. The most important circumstance is the beneficiary's participation in preparing and executing the will. *Roblin v. Shantz, Executrix, supra*, 210 Or at 378; *see Knutsen v. Krippendorf, supra*, 124 Or App at 309.

Before directly addressing the correctness of summary judgment in this case, we first address appellants' assignment that the court erred in striking portions of the affidavit of appellant Marie Lane describing respondent's alleged undue influence. The trial court did not err. However, even excluding the Lane affidavit, there are material issues of fact as to the existence of a confidential relationship or suspicious circumstances.

■  Appellants, citing *McKee v. Stoddard*, 98 Or App 514, 520, 780 P2d 736, *rev den* 308 Or 660 (1989), contend that a relationship between a husband and wife is a confidential

relationship. Appellants further emphasize that here respondent was not only the wife, but also the care-giver both before and after she married testator. *See In re Reddaway's Estate, supra,* 214 Or at 421 (noting that relationship between a care-giver and a patient may be confidential).

Conversely, respondent argues that the characterization of a particular relationship as "confidential" for purposes of an undue influence claim depends not on some sort of categorical taxonomy — *e.g.*, husband-wife, nurse-patient — but on the nature and dynamic of a given relationship. In particular, respondent asserts that the controlling inquiry is whether the "relationship is such as to indicate a position of dominance by the one in whom confidence is reposed over the other." *Doneen v. Craven, Executor et al, supra,* 204 Or at 522. *Accord McKee v. Stoddard, supra,* 98 Or App at 523 (Buttler, J., concurring) (husband-wife relationship is not *per se* "confidential relationship"). Respondent further asserts that there was no evidence that she exercised dominance over her husband and that, on the contrary, the evidence shows that testator was active in his business affairs until his death, and that the lawyer who prepared the wills for testator saw no indication of any influence other than testator's "own conviction that he had a definite plan for the distribution of his estate."

We need not choose between the parties' contending definitions of "confidential relationship" because, even under respondent's approach, there are material factual disputes here as to the nature of respondent's relationship with testator. Appellants presented evidence that respondent started caring for testator after he had lost his wife of almost 40 years, that respondent moved in with testator five or six months after starting to care for him, that two weeks after their marriage the couple moved from Heppner where testator had spent his adult life, and that respondent interfered with the efforts of testator's children to continue a relationship with him. Viewing the inferences from those facts in the light most favorable to appellants, as we must, we conclude that there are issues of fact as to whether respondent was in a position of domination or superiority over testator. *See Doneen v. Craven, Executor et al, supra,* 204 Or at 522; *Knutsen v. Krippendorf, supra,* 124 Or App at 309; *McKee v. Stoddard, supra,* 98 Or App at 523 (Buttler, J. concurring).

■ We also conclude that there are issues of fact as to the existence of some suspicious circumstances. We agree with respondent that there was no evidence that respondent participated in the preparation of testator's will. There was also no evidence of secrecy or haste, and the disposition to decedent's wife, one son and grandchildren cannot be said to be an unnatural or unjust gift solely because other children were omitted. Nonetheless, we conclude that the facts surrounding decedent's change in attitude toward those children, his change in testamentary plan and his possible susceptibility to influence—all of which are interrelated—preclude summary judgment.

These are precisely the types of issues of inference and credibility that must be resolved by the factfinder. The trial court erred in granting respondent's motion for summary judgment.

Reversed and remanded.